IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ABDUL SHADEED AL-SABIR | : | |
| | : | |
| | : | |
| v. | : | Civil No. CCB-13-1592 |
| | : | |
| | : | |
| CEVA LOGISTICS U.S., INC. | : | |
| | : | |

**MEMORANDUM**

Abdul Shadeed Al-Sabir sues his former employer, CEVA Logistics U.S., Inc. ("CEVA"), alleging that he was discharged on the basis of his race or color in violation of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e-2(a)(1).[1] CEVA now moves for summary judgment. That motion has been fully briefed and no hearing is necessary to its resolution. *See* Local Rule 105.5 (D. Md. 2014). For the reasons described below, CEVA's motion will be granted.[2]

**BACKGROUND**

CEVA is a logistics company that provides fueling services to transportation companies. (*See* Mot. Summ. J., Ex. 2, Hershberger Aff. 1, ECF No. 19-3.) CEVA's Baltimore facility employed drivers responsible for fueling trains in Maryland, Delaware, and Pennsylvania. (*See* Hershberger Aff. 1.) Those drivers were responsible for filling their trucks with fuel, transporting that fuel to locomotives, and filling the locomotives with it. (*See* Mot. Summ. J.,

---

[1] Although Al-Sabir's complaint alleges other adverse employment actions, including racial harassment, he now concedes that these actions "cannot be proven to have occurred solely as a result of racial animus" and does not oppose summary judgment as to those alleged adverse employment actions. (Opp. Mot. Summ. J. 5, ECF No. 20.)

[2] Al-Sabir has also moved for leave to file a surreply in response to CEVA's erroneous argument, presented in its initial reply memorandum, that Al-Sabir's affidavit in support of his opposition memorandum was not part of the record. (Reply 1–2, ECF No. 23.) Following Al-Sabir's filing of that motion, CEVA submitted an amended reply memorandum, withdrawing its erroneous argument. (Am. Reply 1–2, ECF No. 27.) Al-Sabir's motion to file a surreply will thus be denied as moot.

Ex. 1, Navikoff Aff., Ex. B, ECF No. 19-2; Mot. Summ. J., Ex. 3, Al-Sabir Dep. 114, ECF No. 19-4.) Historically, drivers at CEVA's Baltimore facility serviced only one client, CSX Transportation ("CSX"). (*See* Hershberger Aff., 1.) Beginning in November 2011, however, CEVA took on a new contract to fuel certain locomotives of the Norfolk Southern Railroad ("NS"). (*See* Hershberger Aff. 1).

Al-Sabir began working at CEVA in early November of that year. (*See* Al-Sabir Dep. 109.) There, he was immediately assigned to be the sole driver responsible for servicing the firm's new contract with NS. (*See* Hershberger Aff. 1; Al-Sabir Dep. 115, 122.) Gary Hershberger, an Operations Manager at CEVA, served as Al-Sabir's supervisor. (*See* Hershberger Aff. 1.) Al-Sabir's interactions with Hershberger, however, were relatively limited. They spoke over the telephone three times and in person twice, although Al-Sabir saw Hershberger more often than that. (*See* Al-Sabir Dep. 175–76.)

In an affidavit, Hershberger stated that Al-Sabir's performance on the job was unsatisfactory. According to Hershberger, Al-Sabir sometimes completed his fuel-delivery routes slowly and NS frequently complained to Hershberger about Al-Sabir's work. (*See* Hershberger Aff. 2–4; Al-Sabir Dep. 153–54.) On December 17, 2011, Al-Sabir called Hershberger to inform him that he was unable to complete his route and brought his trucks back to the Baltimore facility without fueling several locomotives. (*See* Hershberger Aff. 4; Al-Sabir Dep. 153–54.) Two days later, Hershberger terminated Al-Sabir's employment with CEVA, before the completion of his probationary period as a new employee. (*See* Hershberger Aff. 5.)[3]

---

[3] Hershberger's affidavit contains numerous other complaints about Al-Sabir's performance, which Al-Sabir disputes in his own affidavit. There is no evidence in the record, however, that contradicts the complaints listed in the body of the memorandum.

## ANALYSIS

### I. Standard of Review

Under Federal Rule of Civil Procedure 56(a), summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added).  Whether a fact is material depends upon the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48.  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).  The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in his favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citation omitted); *see also Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 283 (4th Cir. 2013).  At the same time, the court must not yield its obligation "to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (citation and internal quotation marks omitted).

### II. Employment Discrimination

"Generally speaking, a plaintiff may avert summary judgment and establish a claim for intentional . . . discrimination through two avenues of proof." *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004) (en banc).

A plaintiff can . . . present[] direct or circumstantial evidence that raises a genuine

3

issue of material fact as to whether an impermissible factor such as race motivated the employer's adverse employment action. . . . Alternatively, a plaintiff may "proceed under [the *McDonnell Douglas*] 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination."

*Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005) (alteration in original) (quoting *Hill*, 354 F.3d at 285). Al-Sabir maintains that both these "avenues" remain open to him. The record, however, forecloses his access to either route to relief.

### A. Direct Evidence

Al-Sabir asserts that direct evidence that his supervisor, Hershberger, verbally harassed him is sufficient to sustain his discrimination claim against summary judgment. (Opp. Mot. Summ. J. 5–6.) "Direct evidence must be 'evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision.' Even if there is a statement that reflects a discriminatory attitude, it must have a nexus with the adverse employment action." *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006) (internal citations omitted) (quoting *Taylor v. Virginia Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (en banc)). To evaluate the significance of allegedly discriminatory verbal statements, "[c]ourts have considered the context of the statement, its temporal proximity to the adverse employment action, and the status of the person making the statement in determining whether such a nexus exists." *E.E.O.C. v. CTI Global Solutions, Inc.*, 815 F. Supp. 2d 897, 906 (D. Md. 2011).

Roughly one month before Al-Sabir's termination, he and Hershberger had a verbal altercation over the telephone. As Al-Sabir recounted in his deposition, Hershberger "cursed me and told me to get my black ass down the road. If I don't like what is going on, get my black ass

out of here." (Al-Sabir Dep. 174.)[4]  Although that statement "reflects a discriminatory attitude," it lacks a sufficiently close nexus to Al-Sabir's termination to serve as direct evidence.  Al-Sabir does not explain the context surrounding Hershberger's alleged statement.  It is an isolated comment that occurred nearly a month before Al-Sabir's termination.  A jury could not sustain Al-Sabir's claim on the basis of that statement alone.

**B. Prima Facie Case**

Al-Sabir also asserts that he has established a prima facie case of discrimination, relying on the following elements: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (citing *White v. BFI Waste Servs., LLC*, 375 F.3d 288, 295 (4th Cir. 2004)).  The plaintiff bears the burden of making out such a case.  *See, e.g.*, *Hill*, 354 F.3d at 285.  Al-Sabir has not carried that burden as to the fourth element of his prima facie case.[5]

Al-Sabir first argues that employees who were not fired without cause received more favorable treatment than he did.  (Mem. Reply Oct. 16, 2014, Order 1, ECF No. 30.)  Not so.  Even assuming that Al-Sabir *were* terminated without cause—a conclusion the court does not endorse—he was a probationary employee, unlike most of those with whom he worked.  *See,*

---

[4] Hershberger denies saying anything of the sort to Al-Sabir.  (Hershberger Aff. 4.)  Rule 56, however, requires reading the record in the light most favorable to the non-moving party—here, Al-Sabir.  Al-Sabir, for his part, indicates in an affidavit written *after* his deposition that Hershberger delivered that racial invective on December 17, rather than the previous month, as he had stated in his deposition.  (Opp. Mot. Summ. J., Ex. 1, Al-Sabir Aff. 3, ECF No. 20-1.)  Under the so-called "sham affidavit" rule, "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that *flatly contradicts* that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (emphasis added).  The court will thus disregard Al-Sabir's contention, in his affidavit, that Hershberger's statement occurred on December 17.

[5] Because Al-Sabir's failure to make out the fourth element of his prima facie case resolves this motion, the court does not reach CEVA's alternative arguments for summary judgment.  As noted, however, Al-Sabir offers nothing to contradict the validity of Hershberger's concerns that Al-Sabir sometimes completed his fuel-delivery routes slowly or that NS complained about Al-Sabir's work.  *See supra* note 3 and accompanying text.

*e.g.*, *Purchase v. Astrue*, 539 F. Supp. 2d 823, 830 (E.D. N.C. 2008) (holding the plaintiff not similarly situated to "a more senior, nonprobationary employee"). And Al-Sabir offers no evidence whatsoever as to CEVA's past treatment of such probationary employees who, like him, were new to the job.

Al-Sabir next asserts that CEVA refrained from terminating two white drivers—Phil and Dale Piper—for what he characterizes as "arguably terminable offenses." (Mem. Reply Oct. 16, 2014, Order 1.)[6] Phil suffered no adverse action after he "disobey[ed] the directions of his supervisor," who had ordered him to "stay in West Virginia and wait for another load." (Mem. Reply Oct. 16, 2014, Al-Sabir Aff 1, ECF No. 30.) And Piper escaped discipline after receiving "a traffic citation for failing to inspect his truck properly," as required by the United States Department of Transportation. (Al-Sabir Aff. 1–2.)

Those incidents are not comparable to what occurred here. In the first place, nothing suggests that Phil and Piper were probationary employees, like Al-Sabir. They were thus *not* similarly situated to him. *See, e.g.*, *Purchase*, 539 F. Supp. 2d at 830. Even were it otherwise, Al-Sabir's relatively conclusory descriptions of Phil and Piper's disciplinary infractions offer none of the contextual detail necessary to compare the possible severity of those incidents with Al-Sabir's conduct. *See, e.g.*, *Coleman*, 626 F.3d at 191; *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511–12 (4th Cir. 1993). Ultimately, then, Al-Sabir has not carried his burden of establishing a prima facie case of discrimination.

---

[6] CEVA asks the court to strike the affidavit supporting this argument from the record under the sham affidavit rule. "Application of the sham affidavit rule at the summary judgment stage must be carefully limited to situations involving flat contradictions of material fact." *Reyazuddin v. Montgomery Cnty., Md.*, 7 F. Supp. 3d 526, 543 (D. Md. 2014) (quoting *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 528 (D. Md. 2014)). Where, as here, a subsequent affidavit does not flatly contradict a prior sworn statement, the court may consider it. *See, e.g.*, *id.* That conclusion in no way prejudices the CEVA, for which the court will grant summary judgment on other grounds.

## CONCLUSION

For the reasons stated above, CEVA's motion for summary judgment will be granted.

A separate order follows.


December 29, 2014                                    /s/
Date                                                 Catherine C. Blake
                                                     United States District Judge